DISPATCH PUB. CO. v. DAVIDSON, Secretary of Alaska.

(First Division.   Juneau.   December 13, 1913.)

No. 1054A.

MANDAMUS (§ 73*)—OFFICERS—MATTERS OF DISCRETION.

On December 11, 1913, the plaintiff corporation paid to the secretary of the territory of Alaska a license fee of $15 under the provisions of the act of the Legislature of Alaska entitled "An act regulating and prescribing fees and license tax to be paid by domestic corporations and by foreign corporations doing business in the territory of Alaska," approved by the Governor of Alaska on the 21st day of April, 1913 (Laws 1913, c. 11), and demanded that it apply on its tax for 1914. The secretary accepted the money but held that plaintiff owed that amount for 1913, and so applied it. Plaintiff filed this suit for mandamus. *Held* that, while the court has authority to issue its writ of mandamus to compel the officer to act, it had none to control his discretion: That, since the secretary had acted in accordance with his judgment of the law, the court would not by mandamus compel him to reverse that action and act in accordance with the court's view.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 115, 135, 144-149; Dec. Dig. § 73.*]

This is a mandamus proceeding brought by the Dispatch Publishing Company, a domestic corporation, against Charles E. Davidson, as secretary of Alaska.   To the amended com-

plaint a general demurrer has been interposed, and said demurrer is now before the court for determination. The demurrer admits all the allegations of fact which are well pleaded. It does not admit conclusions of law. The allegations of fact which are admitted are as follows: (1) That plaintiff is a domestic corporation. (2) That defendant is surveyor general and secretary of the territory of Alaska. (3) That on December 11, 1913, plaintiff tendered to defendant the sum of $15 in payment of the license fee for 1914. (4) That defendant accepted said money as requested, but ruled that under and by virtue of chapter 11, Acts of Territory of Alaska 1913, the annual license fee for the year 1913 was then due, and that an additional fee of $15 will fall due on or before January 1, 1914, and that he applied the said $15 to the payment of an alleged fee for 1913, and has wrongfully and unlawfully entered the said payment in the records of his office as the fee for 1913.

The prayer is for "judgment that a peremptory writ of mandamus issue out of this court commanding said Charles E. Davidson, as secretary of Alaska, to apply the said $15, as tendered by this plaintiff, to the payment of its corporation license fee for the year 1914, and that he be required to enter the same on the records of his office as the fee for 1914, and for such other relief," etc.

In addition to the above there is this allegation of the meaning of the said act of 1913, as applied to the facts set out, viz.:

"Fourth. That under and by virtue of the said statute, it is the duty of the secretary of the territory to receive said corporation annual license fee and to apply the same to the use of the territory as therein provided, beginning with the tax for the year 1914, payable on or before the 1st day of January, 1914, and to make the necessary and proper record thereof in the books of his office."

Gunnison & Robertson, for plaintiff.

John Rustgard, of Juneau, for defendant.

JENNINGS, District Judge. Will a mandamus lie in this case? I think not.

Speaking of the writ of mandamus, the law of Alaska provides as follows:

"It may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. But though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion. The writ shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law." Comp. Laws 1913, § 1385; Carter's Code, § 553, p. 261.

Our statute is taken bodily from that of Oregon, passed October 11, 1862. In the case of Ball v. Lappius, 3 Or. 56, it was said by the Oregon court, in 1868, speaking of the writ of mandamus:

"It may require the officer to proceed to the discharge of any of his functions, although such discharge involves an exercise of discretion and judgment, and a choice between different modes of proceeding; yet it 'shall not control judicial discretion.' And it is safe to go further, and say it shall not control discretion, judicial or otherwise, which the law assigns to an officer. * * * In such case the office of the writ is to compel the officer to act. The mode of action is still to be determined by him in whom the law has lodged the discretionary power. In determining on the necessity and propriety of the writ, it must be observed: (1) Mandamus is proper only where a party has a legal right, and there is no other legal remedy; * * * (2) The right must be certain and clearly made out by the facts of the case."

And in Durham v. Monumental S. & M. Co., 9 Or. 44, the same court said, in 1880:

The law "provides that the writ shall not be issued in any case where there is a plain, speedy, and adequate remedy at law. The existence or nonexistence of an adequate and specific remedy at law under the ordinary forms of legal procedure is therefore one of the first questions to be determined in all applications for the writ of mandamus; and wherever it is found that such remedy exists, and that it is open to the party aggrieved, the courts uniformly refused to interfere by the exercise of their extraordinary jurisdiction."

It will be noted that in the Oregon case first cited the court say that "it is safe to go further and say it shall not control discretion, judicial or otherwise."

In United States v. Black, 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354, which was an application to the Supreme Court of the District of Columbia for a writ of mandamus commanding

the commissioner of pensions to grant an increase of pension, the petitioner averred that the fact was that he was so disabled that he was entitled to this increase under the acts of Congress, and that the commissioner had so found the fact to be, but had erroneously held that under the law he was not entitled to it, and for that reason he refused to allow it. In deciding the case against allowance of the writ, Mr. Justice Bradley said:

"The principle of law deducible * * * is not difficult to announce. The court will not interfere by mandamus with the executive officers * * * in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but, when they refuse to act in a case at all, * * * a mandamus may be issued to compel them" to do so. "Judged by this rule, the present case presents no difficulty. The commissioner of pensions did not refuse to act or decide. He did act and decide. He adopted an interpretation of the law adverse to the relator."

And he adds:

"Whether, if the law were properly before us, * * * we should be of the same opinion, or a different opinion, is of no consequence in the decision of this case."

In Kimberlin v. Commission to Five Civilized Tribes, 104 Fed. 655, 44 C. C. A. 110, Circuit Judge Sanborn said:

"The writ of mandamus issues to compel the performance of a plain duty imposed by law. Where that duty is the exercise of judgment or discretion by an officer in the decision of a question of law or fact, or both, it may issue to compel a decision, but it may not command him in what particular way that decision shall be rendered. When a question has been decided by the officer or person to whose judgment the law has intrusted its determination, the writ of mandamus may not issue to review or reverse that decision, or to compel another."

The case of Decatur v. Paulding, 14 Pet. 497, 10 L. Ed 559, was one in which it was argued that "the true construction" of certain legislation "constituted the law of the case," and that, as the facts were not in dispute, the compliance by the officer with the law was a mere ministerial act, and he had no power to exercise his judgment or discretion in the con-

struction of the act; but Chief Justice Taney denied the writ, saying:

"The head of an executive department of the government, in the administration of the various and important concerns of his office, is continually required to exercise judgment and discretion. He must exercise his judgment in expounding the laws and resolutions of Congress, under which he is required, from time to time, to act."

Applying, then, these principles to the case at bar, what do we find?

Here we have a plaintiff who, on the 11th day of December, 1913, gave to the secretary of Alaska $15 for the purpose of paying the license fee for 1914. We find the secretary accepting the $15, but refusing to note on the records of his office that the license fee for 1914 is paid. Now, if plaintiff's construction of the law is correct, it cannot alter his rights in one particle whether the secretary does or does not note on the record that the fee for 1914 has been paid; it is paid whether the secretary notes it as paid or not. If the secretary's construction of the law that it applies to 1913 is right, then the plaintiff has paid his fee for 1913; if plaintiff's construction of the law, that its first application is for 1914 is right, then he has paid his license for 1914. In either event, how has he been damaged? What standing, then, has plaintiff in a court, asking the issuance of the extraordinary writ of mandamus, a writ rarer and more extraordinary than almost any other writ.

But says plaintiff: Although I have not yet been injured, yet I will be injured some time after the 1st of January, 1914, just when I don't know, because the secretary will strike my name from the roll of corporations. How does plaintiff know the secretary will do that? Has the secretary said he would? Has he threatened to do it? Has he made any move in that direction? If so, it is not alleged in the complaint. But suppose it has been so alleged. Under the act he could not strike the name till July 1, 1914.

Suppose the secretary had said he was going to strike the name from the roll if the tax for 1914 should not be paid by

that time. Plaintiff can come into court and enjoin the secretary. Can he not on June 1st, or at some other time, come in and show that on the 11th of December, 1913, he paid his fee for 1914, and that notwithstanding that the secretary threatens and is about to strike his name from the roll? If the contention is correct, plaintiff will win that suit. The plaintiff says:

"That is true, but, if I am wrong in my contention, I will lose the suit and will have to pay $2.50 extra."

So he will, but that is no warrant for a mandamus.

The plaintiff is in the position of one who says:

"I have not been damaged yet; I may never be damaged. But I want the court now, in 1913, to decide whether or not I will win a suit which I may or may not have to bring in 1914."

Plaintiff contends that he will be damaged because in case he should want to sue some one, for a debt for instance, the secretary may not give him a certificate showing the payment for 1914, and he will therefore not have that which section 7 of the act says shall be "prima facie evidence of the payment of the annual license fee." It is not alleged that the secretary has refused to give him a certificate; but suppose he has so refused and continues to so refuse, it by no means follows that plaintiff has been or will be injured. The production of the certificate is made prima facie evidence, it is true, but that is all. It is not indispensable evidence. If, as a matter of fact, the license fee is paid, plaintiff could allege the fact in any complaint he might bring, and he could always prove the truth of that allegation by the oath of the person who paid the money. True the secretary might deny the truth of the allegation, but he could do that whether plaintiff had the certificate or not.

So that this proceeding lacks the most important requisite to sustain a mandamus. Plaintiff has not been damaged, and as to the future damages he may suffer, if any, he has the injunction.

The writ of mandamus is not a preventive writ. It cannot be made to take the place of an injunction.

In State v. Penn Mutual Life Insurance Co., 50 Ohio, 714, 35 N. E. 1052, a case bearing some resemblance to this, the Ohio court said:

"The complaint is that he is too vigorous and aggressive in its performance; that is, he has charged, and is about to enforce the . collection of, more than is due, and threatens to revoke the license of the relator unless such taxes as he has charged shall be paid at once. For such a complaint, the remedy is clearly by injunction, and not by mandamus. If mandamus can be resorted to in cases like this, there is nothing to prevent every taxpayer who is dissatisfied with the amount of his taxes from testing the question of the legality of such tax by mandamus."

Again, the duty of keeping a record of the payment of license fees is not enjoined on the secretary of state by any law which has been pointed out. His duties are by statute, the same as those of the secretaries of territories, and those duties had been fixed by the statute of the United States, and as they were so fixed they remained until our first Legislature. That Legislature did not enjoin him to do anything but to issue a certificate when license money is paid; and no complaint is made that a certificate was refused, if one was refused. Even if he had refused to issue a certificate, and even if plaintiff was entitled to it, that would not, alone, be sufficient to warrant the issuance of the writ. There would still have to be a showing of damage and of no other remedy. The Oregon courts have repeatedly held that, notably in instances where mandamus was asked to compel an officer of a corporation to transfer certificates of stock, or the sheriff to make a levy.

Again, the question as to whether or not the statute applies to 1913 depends on the construction of the language and the interpretation of the meaning of the statute. The receiving of license fees and the issuing of certificates therefor has been committed by the Legislature to the secretary. That officer cannot discharge his functions without construing that statute. According to the complaint itself, he has construed that statute. He has acted. "He has ruled," says the complaint, "that under and by virtue of said statute the annual license for 1913 is due." That being the case, is he not in the

exact position of Commissioner Black, of whom Mr. Justice Bradley said:

"He did not refuse to act or decide; he did act and decide; he adopted an interpretation of the law adverse to the relator; they were by no means merely ministerial acts."

The demurrer is sustained.